RANDY S. GROSSMAN
United States Attorney
SHITAL H. THAKKAR
Assistant United States Attorney
Illinois State Bar No. 6273151
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8785
Email: Shital.thakkar@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ORLANDO ROJO,<br><br>Defendant. | Case No.: 21-cr-00682-GPC<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENTS**<br><br>DATE: September 12, 2022<br>TIME: 2:30 p.m.<br><br>Hon. Gonzalo P. Curiel |

**I.**

**RELEVANT FACTUAL BACKGROUND**

On November 21, 2020, at approximately 8:45 PM, Orlando ROJO, a United States Citizen, attempted to enter Mexicali, Mexico through the Calexico, California West Port of Entry vehicle lanes. During the outbound inspection a Canine Enforcement Officer (CEO) utilized their canine to screen Defendant's vehicle. The CEO's canine alerted to the door

seams prompting a more thorough search through secondary inspection. That search resulted in officers finding a Glock 27 handgun and $50,000 U.S. Dollars concealed in the rocker panels of ROJO's vehicle. ROJO is a convicted felon.

Homeland Security Special Agents (SA) Mario Boyd and David Carlson interviewed ROJO after he was arrested. Prior to any questioning about the offenses, the following exchange occurred:

>SA BOYD: Have you ever been read your rights before, the Miranda Rights?
>
>DEFENDANT: Ah, before, yeah.
>
>SA BOYD: Yes. You - you've been arrested, correct?
>
>DEFENDANT: Yeah, I've been arrested.
>
>SA BOYD: Okay. What I'm gonna do is I'm gonna read to you, ah, your rights *[Defendant nods affirmatively]*. And as I do that, I want you to, um, initial by each line as I read it *[Defendant nods affirmatively, continues nodding as SA Boyd completes this statement]*, just to let me know that you understand it**…if its ok**[1]
>*[SA Boyd stands up to retrieve a pen for Defendant.]*
>
>DEFENDANT: Mm-hm.
>
>*[SA Boyd hands Defendant a pen, places it near a piece of paper in front of Defendant; Defendant leans forward towards the paper, and grabs the pen as he views the paper]*
>
>SA BOYD: It's okay. Um, are you on any, well, before I start are you on any drugs or alcohol?

---

[1] For purposes of this motion, the United States does not object to the Court using ECF No. 42-1, Defense Motion Exhibit B (hereinafter, "Def. Ex. B"), a transcription of Defendant's Interrogation video (lodged with the Court as Defense Motion Ex. A. through ECF No. 43). However, the United States has found areas of the transcription that need to be corrected, such as the **boldface** statement identified here. The United States will work with Defendant's attorney prior to any further litigation to provide the Court [and/or jury] with an agreed-upon and finalized version.

DEFENDANT: No.
*[Defendant nods to support a negative response]*

SA BOYD: No? Okay. Ah, what - what level of education have you completed?

DEFENDANT: Ah, Freshman.

SA BOYD: Freshman.

DEFENDANT: Yeah, I dropped...

SA BOYD: Okay.

DEFENDANT: ...out in Sophomore.

SA BOYD: Okay. Okay. So, you read and write, right?

DEFENDANT: Yeah.

SA BOYD: Okay. Before we ask you any questions, it is my duty to advise you of your rights.
*[Defendant uses pen to mark on the paper]*[2]

DEFENDANT: Okay.

SA BOYD: You have the right to remain silent. *[Defendant uses pen to mark on the paper]*

Anything you say can be used against you in a court of law or other proceedings. *[Defendant uses pen to mark on the paper]*

---

[2] The United States submits that this piece of paper is Defendant's *Miranda* Rights waiver form, which Defendant eventually fully executes during his interrogation. *See* Exhibit 1, attached hereto. As indicated in the "Argument" section below, the United States' position is that the markings referenced here and beyond in this section are actions taken by Defendant to place his initials on his *Miranda* rights form, and eventually his signature along with the date.

You have the right to consult with an attorney before making any statements or answering any questions. *[Defendant uses pen to mark on the paper]*

You have the right to have an attorney present with you during questioning. *[Defendant uses pen to mark on the paper]*

If you cannot afford an attorney, one will be appointed for you before any questioning if you wish. *[Defendant uses pen to mark on the paper]*

If you decide to answer questions now, you still have the right to stop the questioning at any time or stop the questioning for purpose of consulting an attorney. *[Defendant uses pen to mark on the paper]*

Now at the bottom, you could read that. *[Defendant stares at (seemingly reads) the paper for 8 seconds, then begins again to mark the paper with the pen]*

Now it's up to you do - do you wish to speak to me knowing - knowing these rights?

*[Defendant pauses for 6 seconds]*

DEFENDANT: Well, there's not much to speak of. You know.

SA BOYD: Okay, um.

DEFENDANT: Um, so.

SA BOYD: Well, you - you are - you are under arrest.

DEFENDANT: Yeah.

SA BOYD: Um, do you - do you know what you're under arrest for?

DEFENDANT: Ah, the - the officers that - that handcuffed me, just told me something about
some money.

SA BOYD: Okay.

DEFENDANT: And - and guns.

SA BOYD: Okay, well I mean like - like I said as far as - as far as this is concerned, is your right to if you - if you choose and answer questions.

DEFENDANT: Mm.

SA BOYD: Right now. And, um, it's up to you.

DEFENDANT: So, if - if I sign it, that means I'm gonna have to answer the questions, right?

SA BOYD: No, you can stop at any time. Um, it's just totally up to you. I mean, there's if you don't feel comfortable you can stop it at any time during the questioning. Um, we're just gonna talk about you know, what's going on and what happened and if you don't feel like to answer any questions any further you can stop. Totally up to you.

DEFENDANT: I mean, what - whatever question you got the only thing I'm gonna tell you is that I recently bought the car.

SA BOYD: Okay, well then this *[SA Boyd physically references his copy of the Miranda rights form]* is just part of us talking - talking about that.

DEFENDANT: Mm-hm.

SA BOYD: You know, you can choose to, you wan- talk about that you can sign it and then we'll move forward.

DEFENDANT: Okay.
*[Defendant picks pen back up, and continues again to write on the document, printing and signing his name]*

SA BOYD: All right. The date today. 11-22-20.

DEFENDANT: Ew- 22, huh?

SA BOYD: Uh-huh. Times flying, right?

> DEFENDANT: It's - it's no, it's my wife's birthday today.
> *[Defendant completes executing the document, puts down the pen and sits back]*
>
> See Def. Ex. A at 05:58 to 09:41[3]; *See also* ECF No. 42-1 at 2-7, Def. Def. Ex. B.

Because of the COVID-19 pandemic, Defendant was released but served with a Notice to Appear (NTA), which instructed that he appear on March 4, 2021, at the United States Courthouse located at 2003 West Adams Avenue, El Centro, CA. ECF No. 3. Defendant signed the NTA, but failed to appear as instructed, and a warrant was issued for his arrest. *Id.*; *See also* ECF No. 12. Defendant was indicted on March 2, 2021, charging him with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and Bulk Cash Smuggling in violation of 31 U.S.C. § 5332.

Defendant was eventually arrested on July 5, 2021, when he entered the United States through the Calexico, California West POE pedestrian lane.

## II.
## ARGUMENT

### A. Applicable Law

Before questioning a defendant in custody, officers must inform him "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). No precise formulations of the warnings is required; rather, "[t]he inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir. 2017) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)); *see also United States v. Valencia-Barragan*, No. 18-50243, ___ F. App'x ___, 2020 WL 3960331, *1 (9th Cir. July

---

[3] Defense Exhibit A is a fair and accurate copy of Defendant's interrogation, which was provided through the normal course of discovery. Citations to timeframes refer to the amount of time that has elapsed within the recording—not the time of day—which is the same form of citation used by Defendant in his Motion, ECF No. 42.

13, 2020) (affirming denial of motion to suppress because "when viewed in its entirety, the [*Miranda*] warning was not misleading or confusing").

A defendant may waive their *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. A waiver is knowing and intelligent if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* That inquiry depends on "the totality of the circumstances," including whether a defendant: (1) had adequate "mental capacity," (2) "signed a written waiver," (3) "was advised in his native tongue," (4) "appeared to understand his rights," (5) had the rights "individually and repeatedly explained to him," and (6) "had prior experience with the criminal justice system." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007); *United States v. Price*, 921 F.3d 777, 792 (9th Cir. 2019). Although not dispositive, a written waiver of one's *Miranda* rights "is usually strong proof of the validity of that waiver[.]" *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Carpenter*, 772 F. App'x 419, 422 (9th Cir. 2019) (unpublished).

Additionally, a *Miranda* waiver must be voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, (1986). The United States bears the burden to establish waiver by a preponderance of the evidence. *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

### B. Voluntary Statements

"The Constitution demands that confessions be made voluntarily." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). Although compliance with *Miranda* does not "conclusively establish[] the voluntariness of a subsequent confession," cases in which agents compel an involuntary statement in violation of the Constitution despite adherence to *Miranda* "are rare." *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984). A statement

is unconstitutionally involuntary when a "'defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not voluntary[.]" *Colorado v. Connelly*, 479 U.S. 157 (1986). "A confession accompanied by physical violence is *per se* involuntary, while one accompanied by psychological coercion is not." *Haswood*, 350 F.3d at 1027. Where there is no evidence of physical violence, courts "look to the totality of the circumstances surrounding a confession." *Id.* The United States must show a statement was voluntary by a preponderance of the evidence. *Id.*

The Ninth Circuit has identified the following factors as "relevant" to the inquiry:

> (1) the time between the defendant's arrest and arraignment, (2) whether the defendant knew the nature of the offense with which he was charged at the time of his confession, (3) whether the defendant was aware that he was not required to make any statement, (4) whether the defendant had been advised of his right to counsel, and (5) whether counsel was present at the time of the defendant's confession.

*United States v. Shi*, 525 F.3d 709, 730 (9th Cir. 2008).

### A. Defendant Unequivocally Waived his *Miranda* Rights.

There is also no dispute that Defendant waived his *Miranda* rights. *See* ECF No. 42 at 3 ("Mr. Rojo was at first hesitant to sign and tried to ascertain the purpose of the form and the consequences of signing it. After Agent Boyd reassured him that he could stop questioning at any point even if he signed the form, Mr. Rojo appeared to have his anxieties quelled and quickly agreed to sign.")

### B. Defendant's *Miranda* Waiver was Knowing and Intelligent.

Defendant contends his unequivocal waiver was invalid because it was not knowing, intelligent, or voluntary. The facts of this case and binding precedent confirm the validity of the waiver. As identified above, whether a waiver is knowing and intelligent is an inquiry that depends on "the totality of the circumstances," with consideration given to several specific factors identified by the Ninth Circuit in *Crews*, 502 F.3d at 1140. To assist the

Court, this brief analyzes each of those factors in turn, which clearly demonstrate that Defendant's waiver was knowing and intelligent.

### 1. Defendant had sufficient mental capacity.

The first factor is whether the defendant "was of any diminished mental capacity that prevented him from understanding the nature of his rights or the consequences of abandoning them." *Id.* at 1140. Defendant seems to claim that he was mentally incapacitated. He implies that he was not in "a normal state of mind" because of "the ongoing effects of a methamphetamine binge" and because the SA Boyd "ambiguous clarifications." ECF No. 42 at 10; *See also Id.* at 7-8.

As to the earlier intoxication, Defendant concedes, "intoxication does not necessarily alone negate the validity of a waiver [citation omitted].[4]" The only support Defendant offers beyond the earlier intoxication itself is the follow up question Defendant asks, and SA Boyd's response. However, that exchange only supports the obvious: that defendant knowingly and intelligently waived his rights and was fully competent to in doing so. Defendant relies heavily on the fact that he did not immediately answer when Agent Boyd asked if he "would like to speak with [SA Boyd]" after his rights were read to him. ECF No. 42 at 6. Defendant describes this pause as a "a significant period of time." *Id.* In

---

[4] In addition to *Matylinsky v. Budge*, F.3d 1083, 1095 (9th Cir. 2009), which Defendant cites, *see also e.g.*, *United States v. Castaneda*, 735 F. App'x 262, 265 (9th Cir. 2018) (unpublished) (affirming finding of sufficient mental capacity and validity of waiver despite "alleged methamphetamine use or sleep deprivation" in light of defendant's "statement that he understood his rights"); *United States v. Rodriquez-Rodriquez*, 393 F.3d 849, 855 (9th Cir. 2005) (finding defendant's waiver of *Miranda* rights valid despite evidence that defendant was suffering from mild to moderate heroin withdrawal); *United States v. George*, 987 F.2d 1428, 1430-31 (9th Cir. 1993) (noting that "a defendant can voluntarily waive his Miranda rights even when he is in the hospital, on medication, and in pain") *People v. Stroud*, 273 Cal. App. 2d 670, 679 (1969) (.229 blood alcohol content, standing alone, "neither proves nor disproves defendant's capacity to understand and rationalize"); *United States v. Comstock* (9th Cir. 2011) 443 Fed.Appx. 310, 312 (*Miranda* waiver valid despite intoxication when defendant was coherent, responsive, aware of surroundings, and gave detailed confession); *People v. York*, 108 Cal.App.3d 779, 787 (1980) (*Miranda* waiver valid despite the defendant's drinking.)

reality, as the video demonstrates, Defendant paused for a mere 6 seconds. Def. Ex. A at 08:06 to 08:12. Furthermore, the pause does not demonstrate confusion. To the contrary, those 6 seconds demonstrate that Defendant was (1) listening to the *Miranda* rights being read; (2) reading the rights as they were being read; (3) thought about what the rights meant; (4) and thought about what it meant to waive his *Miranda* rights. Defendant essentially concedes this point in his motion:

> Rather than sign the form at this point, Mr. Rojo asked a *clarifying* question **to make sure he understood the consequences of signing it**. He asked: "So, if - if I sign it, that means I'm gonna have to answer the questions, right?" After Agent Boyd *clarified* that he **could stop answering at any point**, Mr. Rojo responded: "I mean what - whatever question you got the only thing I'm gonna tell you is that I recently bought the car." ECF No. 42 at 6-7 (emphasis added).

Despite the obvious, Defendant describes this exchange as "apparent confusion." *Id.* Defendant also complains that SA Boyd "failed to '*repeatedly explain*' [Defendant's] rights and check his understanding." *Id.* (emphasis added). Ironically, Defendant's argument ignores the narrow question he himself asked during the interrogation, which was addressed accurately and completely by SA Boyd. Defendant now suggests that reinforcing or repeating *each* right, would be less confusing than simply answering the direct question he asked SA Boyd. The exchange itself belies Defendant's claims to the contrary:

> DEFENDANT: So, if - if I sign it, that means I'm gonna have to answer the questions, right?
>
> SA BOYD: *No, you can stop at any time.* Um, it's just *totally up to you.* I mean, there's *if you don't feel comfortable you can stop it at any time during the questioning.* Um, we're just gonna talk about you know, what's going on and what happened and if you don't feel like to answer *any* questions any further *you can stop*. *Totally up to you.*
>
> *See* Def. Ex. A at 008:43 to 09:02.

Finally, Defendant was specifically asked about his drug use, and he discussed it freely at several points during his interrogation. In fact, within minutes of the interrogation, Defendant was asked ". . . overall, you're doing okay" and Defendant replied emphatically, "Yeah. Yeah." *Id.* at 002:34 to 02:36. Minutes later, Defendant was asked "are you on any, well, before I start are you on any drugs or alcohol," to which Defendant replied "No." *Id.* at 06:39 to 06:44. Defendant had several opportunities throughout the interrogation to claim, as he does now, that his earlier drug use impaired his comprehension, but failed to do so. Defendant does not provide anything compelling to indicate that he was not in "a normal state of mind" or that he had a "diminished mental capacity" preventing him from understanding his rights. *United States v. Velasco-Castaneda*, 442 F. App'x 316, 317 (9th Cir. 2011) (unpublished) (affirming *Miranda* waiver in absence of evidence that defendant "suffered from any incapacity that prevented him from understanding the nature of his rights or the consequences of waiving them").

### 2. Defendant signed a *Miranda* waiver form.

After indicating that he understood each of his *Miranda* rights and was willing to answer the agents' question, Defendant executed a written *Miranda* waiver form, which further supports the validity of his waiver. The Court should give this factor great weight because a written waiver "is usually strong proof of the validity of that waiver[.]" *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Carpenter*, 772 F. App'x 419, 422 (9th Cir. 2019) (unpublished). Certainly, this "strong proof" is present here. However, that proof is strengthened by Defendant's physical reactions before and after signing his *Miranda* form. Before, Defendant's rights were read to him, he leaned in, and began focusing on the form itself. *See* Def. Ex. A at 06:31 to 06:38 and the following screenshots from that clip:

//

//

//

//




While the rights were being read to Defendant, he focused intently on his waiver form, initialing after each instruction, while the SA Boyd paused for him to do so. *Id.* at 06:31 to 07:55. Defendant also demonstrated his focus by asking a relevant follow up question, as discussed earlier. Because the Defendant initialed, signed, and dated a written *Miranda* waiver form, and demonstrated his full understanding through his body language, and a relevant follow up question, the second factor supports and is strong evidence of the validity of his waiver.

### 3. Defendant was advised of his *Miranda* rights in his native language.

As Defendant explained in the interrogation, he grew up in Palm Desert California, and went to went to middle school and high school in that area. *See* Def. Ex. A. 16:45 to 16:56. Defendant clearly demonstrated that he understands English throughout the interrogation and does not allege any need for a language other than English. As such, the third factor supports the validity of Defendant's waiver. *Cf. United States v. Shi*, 525 F.3d

709, 730 (9th Cir. 2008) (affirming admission of confession where defendant "was read his rights by an interpreter . . . and signed a Miranda waiver written in Mandarin Chinese."); *United States v. Martinez-Camargo*, 765 F. App'x 205, 208 n.1 (9th Cir. 2019) (unpublished) (affirming denial of motion to suppress because defendant "was advised of her *Miranda* rights in her native language, was offered the help of a translator, . . . and signed a written waiver in her native language.").

### 4. Defendant appeared to understand his *Miranda* rights.

The fourth factor also supports the validity of Defendant's waiver. First, Defendant confirmed that he understood each of his rights through his actions while the rights were being read and his follow up question before ultimately signing and dating the waiver. *Cf. Crews*, 502 F.3d at 1140 ("Crews stated that he understood his rights."); *United States v. Gonzalez*, No. 07-CR-2977-JLS, 2008 WL 11438222 (S.D. Cal. Feb. 5, 2008) (Sammartino, J.) ("The Court is persuaded that Defendant understood these rights, as evidenced by Defendant's initials on the 'Statement of Rights' form and his affirmative responses when asked whether he understood each right as he read it."), *affirmed United States v. Gonzalez*, 337 F. App'x 705 (9th Cir. 2009) (unpublished). Second, Defendant made no statement that would indicate he did not understand his rights. *Martinez-Camargo*, 765 F. App'x at 208 n.1 ("Martinez-Camargo made no statement during the provision of the *Miranda* warnings themselves that demonstrated a lack of understanding of the warnings or of her rights"). The fourth factor supports that the waiver was knowing and voluntary.

### 5. Defendant was advised of each of his *Miranda* rights.

The fifth factor further supports the validity of the waiver. Defendant was told he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to consult with an attorney before making any statements or answer questions, that he had a right for an attorney to be present during the questioning, and that an attorney would be assigned to him before any question if he could not pay for an attorney. Def. Ex. A at 05:58 to 09:41; *See also* ECF No. 42-1 at 2-7, Def. Def. Ex. B. Because he

was adequately advised of each of his rights, the fifth factor supports the validity of the waiver.

### 6. Defendant's prior experience with the criminal justice system.

Defendant was convicted of a felony in 2011. During the interrogation, Defendant admitted having his rights read to him through that prior arrest. Def. Ex. A at 05:58 to 06:10. This factor supports the validity of his waiver.

### C. Defendant's *Miranda* Waiver Was Voluntary.

Defendant's claims about his earlier methamphetamine use, and his "apparent confusion" are addressed above, and do not support his claim of that his waiver was involuntary. Moreover, this is not one of the "rare" cases in which law enforcement compelled a self-incriminating statement despite adhering to the dictates of *Miranda*. *Berkemer*, 468 U.S. at 433 n.20. Defendant's statements are admissible because they were voluntary and not compelled by coercive police activity. In arguing that the statements were involuntary, Defendant fails to acknowledge the factors relevant to voluntariness. The Court should analyze those factors, which confirm Defendant's statements were voluntary.

The first factor—the time between arrest and arraignment—weighs strongly against the statement being involuntary because Defendant was released immediately after he was arrested, and given a notice to appear months later. ECF No. 3. In other words, the interview did not delay Defendant's presentment to a Magistrate Judge.

The second factor also weighs against the statement being involuntary, as Defendant's own statement makes clear he knew the nature of the offense with which he was charged at the time of making the confession. *See* Def. Ex. A at 08:17 to 08:30 ("the - the officers that - that handcuffed me, just told me something about some money…And – and drugs…"); *United States v. Andaverde*, 64 F.3d 1305, 1311 (9th Cir. 1995) ("The second factor also supports voluntariness because Andaverde knew the nature of the offense with which he was charged. A defendant need not be advised . . . of the specific statute he is suspected of violating.").

The third factor also weighs against Defendant's statement being involuntary. Defendant was aware that he was not required to make any statement, based on the question he asked before waiving his rights, which has been addressed above.

The fourth factor also weighs against Defendant's statement being involuntary because Defendant had been advised of his right to counsel. Finally, the fifth factor weighs in Defendant's favor because counsel was not present during the interview—but that was a result of Defendant expressly waiving that right.

Thus, the relevant factors confirm Defendant's statements were voluntary; but so does the complete absence of coercive police conduct, and Defendant's own words and actions throughout the interrogation. First, Defendant does not allege any express or implied threats. *See United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998) (affirming finding that statement was voluntary where there was "no evidence of threats regarding Edwards' baby or her brother"); *Lopez v. Janda*, 742 F. App'x 211, 214 (9th Cir. 2018) (unpublished) (finding no coercion because agent "made no threat"); *United States v. Orellana*, 236 F. App'x 281, 282 (9th Cir. 2007) (unpublished) (finding statement voluntary, finding no coercion, and observing defendant "d[id] not allege that the officers threatened to keep him from seeing his family if he did not cooperate").

Similarly, the fact that three hours elapsed between Defendant's offense and interview does not render his statement involuntary. *Cf. Blanco v. Mukasey*, 518 F.3d 714, 721 (9th Cir. 2008) (finding statement voluntary despite Defendant having to "wait as long as 26 hours between his initial detention and his interview"); *United States v. Gamez*, 301 F.3d 1138, 1144 (9th Cir. 2002) (finding voluntary statements defendant provided in three separate interviews during 31-hour detention after arrest); *Lopez v. Janda*, 742 F. App'x 211, 214 (9th Cir. 2018) (unpublished) ("it is not coercive when a suspect is placed in a straight-backed chair and repeatedly questioned for three hours before eventually answering the interrogators questions") (citing *Berghuis v. Thompkins*, 560 U.S. 370, 386-87 (2010)).

That there was no coercive police activity is only the first reason why Defendant's voluntariness challenge fails. There is also no evidence to satisfy the second necessary

element: that his will was overborne. Here, Defendant's will was not overborne because he stood his ground and never confessed. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (explaining juvenile's will was not overborne because he "stood his ground" and "never 'confessed' in any common sense of the word"); *United States v. Perez*, 538 F. App'x 818, 819 (9th Cir. 2013) (unpublished) ("That a suspect remains in control of his responses and consistently denies guilt is compelling evidence that his will was not overborne."); *Phillips v. People*, 443 P.3d 1016, 1028 (Colo. 2019) ("Indeed, Phillips did not confess during the police-car interrogation, and so his will was not overborne by the detective's actions."); *State v. Arriaga-Luna*, 311 P.3d 1028, 1034 (Utah 2013) ("Mr. Arriaga-Luna did not confess during this interview, which suggests that the officer's statements did not overcome his free will."); *State v. Pilcher*, 472 N.W.2d 327, 334 (Minn. 1991) ("That he adhered to this woven tapestry of lies shows that Pilcher's will was not overborne.").

Moreover, through the entire interrogation, Defendant exhibited comfort in discussing various personal topics with the agents, which further shows that his exchange was voluntary. *See e.g.*, Def. Ex. A at 10:40 to 11:37 (Defendant boasts about the various ways he makes money, buying items from the United States and re-selling for a profit in Mexico); *Id.* at 15:35 to 16:30 (Defendant and SA Boyd discuss gambling at casinos here compared to those in Minneapolis). There is no basis to find Defendant's statement involuntary. Clearly, as he stated during the interrogation, "I have nothin' to hide," (Def. Ex. A at 56:03), which is why he knowingly, intelligently, and voluntarily waived his *Miranda* rights.

//
//
//
//
//
//

# III.
# CONCLUSION

Defendant was accurately informed of his *Miranda* rights, his waiver of those rights was knowing, intelligent, and voluntary, and his statement was voluntary. The United States respectfully request that the Court deny Defendant's Motion to Suppress.

DATED: August 23, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/Shital H. Thakkar*
SHITAL H. THAKKAR
Assistant United States Attorney